UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EMILY HELM, M.D.,

       Plaintiff,

vs.                             CASE NO.: 8:11-cv-572-EAK-AEP

J.H. GATEWOOD EMERGENCY
SERVICES, P.A.; and EMCARE, INC.

       Defendants.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS cause is before the Court on Defendants', J.H. Gatewood Emergency ("Gatewood")

and EmCare, Inc. ("EmCare"), Motion for Summary Judgment. (Doc. 18). The Court reviewed

the Motion for Summary Judgment, as well as Plaintiff's, Emily Helm, M.D. ("Dr. Helm"),

Memorandum of Law in Opposition to Summary Judgment. (Doc. 29). For reasons set forth

below, the Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

On March 18, 2011, the plaintiff filed a complaint against the defendants in the United

States District Court for the Middle District of Florida, Tampa Division. (Doc. 1). Plaintiff seeks

relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title

VII"), and the Florida Civil Rights Act of 1992, § 760.10, et seq. ("FCRA"), to redress unlawful

employment practices. (Doc. 1). Defendants filed a motion for summary judgment on March 30,

2012. (Doc. 18). The parties dispute whether Plaintiff was an independent contractor, not an

1

employee, and therefore not subject to coverage under Title VII and FCRA. (Doc. 18). We view the following facts in the light most favorable to the plaintiff. These facts are taken as true for the limited purpose of resolving this motion.

Before the events giving rise to this action, Plaintiff worked as an emergency room physician in facilities operated by the defendants. (Doc. 1). Defendants have 500 exclusive contracts with client hospitals in nearly forty states to run their emergency rooms. (Doc. 1). Defendant EmCare claims it is dedicated to and managed by physicians. (Doc. 1).

In the spring of 2009, Plaintiff claims that her direct supervisor, Dr. Christopher Haddad, began to sexually harass her with sexually vulgar comments and conduct of a sexual nature. Plaintiff also claims that Dr. Haddad pretended to ingest an illegal substance, Ecstasy, in Plaintiff's presence and left materials of a sexual nature in Plaintiff's mailbox signed by him. (Doc. 1). On June 13, 2009, Plaintiff made her initial complaint about the sexual harassment to Dr. Haddad's supervisor, Dr. Ayesha Hussein ("Dr. Hussein") and made a request to avoid working with Dr. Haddad. (Doc. 1). Two days after this initial complaint, Dr. Hussein informed Plaintiff that she would only process her complaint only if Plaintiff submitted written and notarized documents. Dr. Hussein also informed Plaintiff that Dr. Haddad may sue her if she pressed the complaint further and that she should "let it go." (Doc. 1). Dr. Hussein did not forward Plaintiff's complaint to Defendants' corporate office but gave Plaintiff a human resource manual. (Doc. 1).

On June 24, 2009, Plaintiff expected to work eight shifts per month under a standard part-time contract. (Doc. 1). On June 25, 2009, Plaintiff contacted Michael Fain ("Fain"), Defendants' Vice President of Client Relations, and requested that she be permitted to avoid working with Dr. Haddad and she expressed her concerns about Dr. Hussein's previous

2

comments about how Plaintiff could be sued. (Doc. 1). Between this time and the end of the year, Plaintiff was given an average of eight shifts per month which she was satisfied with. (Helm: 65: 8–23). In August 2009, Dr. Haddad scheduled himself to work with Plaintiff on two of her shifts. Plaintiff spoke with Dr. Hussein about the schedule and Dr. Hussein agreed to switch one shift with Plaintiff but refused to find coverage for the other shift in which Dr. Haddad was working. (Doc. 1). Plaintiff complained to Fain on August 21, 2009 about the schedule and Fain found coverage for the other shift Dr. Haddad was working. (Doc. 1).

On August 24, 2009, Plaintiff was called into a meeting with Dr. Hussein and others and was told that she could not be guaranteed a set number of shifts as a part-time doctor beginning November 2009. (Doc. 1). Defendants then asked Plaintiff to execute an addendum to her existing part-time contract dates September 1, 2009, which provided that Plaintiff's hours of work were dependent on a "mutual" agreement by Defendants. (Doc. 1). Defendants, becoming aware of Plaintiff's concern about getting fewer shifts, proposed that she work a full-time schedule of twelve shifts in October 2009. (Doc. 1).

On October 13, 2009, Plaintiff filed a charge of discrimination and otherwise opposed Defendants' conduct through her retained counsel. Plaintiff received no response to this correspondence. (Doc. 1). Due to a denial of shifts in December, Plaintiff filed a second charge of discrimination on January 20, 2010. (Doc. 1). Following this complaint, Dr. Hussein verbally reprimanded Plaintiff about purported job-performance issues on or about February 9, 2010 and threatened Plaintiff with discharge. (Doc. 1). Due to alleged ongoing harassment, Plaintiff filed another charge of discrimination on April 22, 2010. (Doc. 1). In November 2010, Plaintiff was denied a transfer to another hospital and filed another charge of discrimination on December 15, 2010. In January 2011, Plaintiff was terminated.

Plaintiff filed a complaint with this Court on March 18, 2011 alleging sexual harassment under Title VII and FCRA, as well as retaliation under Title VII and FCRA.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). On a motion for summary judgment, a moving party discharges its burden by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.  If the moving party meets this burden, the nonmoving party must then designate specific facts demonstrating a genuine issue of material fact in order to avoid summary judgment. *Id.* at 324.

Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson*, 477 U.S. at 249. Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248; *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259–1260 (11th Cir. 2004). In determining whether material issue of fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983). The weighing of evidence and determinations of credibility are functions of the jury, not the judge.

4

*Anderson*, 477 U.S. at 255. *See Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d

1294, 1299 (11th Cir. 1983) (stating that the Court's function is not to decide issues of fact, but

rather to determine if issues of fact exist). If the determination of the case rests on which

competing version of the facts or events is true, the case should be submitted to the trier of fact

and the motion for summary judgment denied. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531

(11th Cir. 1987).

## DISCUSSION

I.   **It is a question of fact for the jury whether Dr. Helm is an independent contractor
     or employee for Title VII and FCRA purposes.**

Title VII offers very little guidance on the distinction between an employee and an

independent contractor. *Demers v. Adams Homes of Nw. Fla., Inc.*, 2007 WL 3333440 (M.D.

Fla. Nov. 7, 2007). Title VII defines "employee" as "an individual employed by an employer."

42 U.S.C.2000e(f). An individual's employment status is not determined by the label used in the

contract between the parties. *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1492 (11th Cir. 1993).

The Eleventh Circuit uses a multi-factor test to determine whether a person is an employee or an

independent contractor. *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 340 (11th Cir. 1982). *See also*

*Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1234 (11th Cir.2004) (stating that the Eleventh

Circuit "has adopted the 'economic realities' test to determine whether a Title VII plaintiff is an

employee"). An individual's employment status "is a question of federal law to be ascertained

through consideration of the statutory language of the Act, its legislative history, existing federal

case law, and the particular circumstances of the case at hand." *Cobb,* 673 F.2d. at 339. *See also*

*Smith-Johnson v. Thrivent Fin. for Lutherans*, 2005 WL 1705471 (M.D. Fla. July 20, 2005). The

"economic realities" test has many factors and considers all of the circumstances surrounding the

work relationship with no one factor being determinative. *Cobb*, 673 F.2d at 339. "The extent of

the employer's right to control the 'means and manner' of the worker's performance is the most important factor to review." *Id.* Additional relevant factors include:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice or explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer;" (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.*

Under this test, there are disputed facts concerning the amount of control Defendants exerted over Dr. Helm. Example of these facts are: Dr. Helm testified that her hours and work schedule were controlled by Defendants, she was supervised while working through EmCare employed medical and associate medical directors, and EmCare handled her schedule and made a decision to limit her hours after she complained of sexual harassment. (Doc. 29). Construing these facts in favor of Dr. Helm, as required under Federal Rules of Civil Procedure Rule 56, we cannot rule as a matter of law that Dr. Helm is an independent contractor. It is a matter of fact to be decided by a jury whether Dr. Helm was an independent contractor or employee.

## II.   It is a question of fact for the jury whether EmCare is a proper defendant.

Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...." *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1340 (11th Cir. 1999) (citing 42 U.S.C. § 2000e(b)). It is a threshold jurisdictional matter whether a defendant meets the statutory definition of

"employer." *Id.* In the Eleventh Circuit is has been found that the court must "look beyond the

nominal independence of an entity and ask whether two or more ostensibly separate entities

should be treated as a single, integrated enterprise when determining whether a plaintiff's

'employer' comes within the coverage of Title VII." *Id.* at 1341. In Title VII cases, the courts

have applied the single employer/integrated enterprise concept. Under this test, the Eleventh

Circuit has applied the following four factors promulgated by the National Labor Relations

Board ("NLRB"):

  (1) interrelations of operations;
  (2) centralized control of labor relations;
  (3) common management; and
  (4) common ownership or financial control.

*Id.* at 1341.

Due to the factual dispute over whether EmCare is a proper defendant, there is a genuine

issue of fact that must be determined by the jury.

III.    **Sexual Harassment Under Title VII and FRCA**

Both Title VII and the FCRA prohibit employers from discriminating "against any

individual with respect to compensation, terms, conditions, or privileges of employment, because

of such individual's . . . sex." U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760.10(1)(a). Because the

FCRA is patterned after Title VII, courts generally apply Title VII case law to discrimination

claims brought under the FCRA. *Lockett v. Choice Hotel Int'l*, 2009 WL 468298 (11th Cir.

2009); *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n. 1 (11th Cir. 2004). Accordingly,

there is no need to independently analyze Dr. Helm's FCRA claims.

The legal standard for hostile work environment claims in the Eleventh Circuit is "well-

settled." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010). A hostile

work environment sexual harassment claim is actionable under Title VII only if the employee shows:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (citing to *Henson v. City of Dundee*, 682 F.2d 897, 903-905 (11th Cir.1982)).

"Sexual harassment constitutes sex discrimination only when the harassment alters the terms or conditions of employment." *Id.* Sexual harassment as federally prohibited employment discrimination occurs when "an employee's expressed terms of employment, such as salary or continued employment, are conditioned upon compliance with the employer's sexual demands." *Id.* In traditional hostile-environment cases, an employer's harassing actions toward an employee do not constitute discrimination under Title VII unless the conduct is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' *Id.* at 1245–46 (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57 (1986)).

A reasonable person must find the work environment to be hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment is beyond Title VII's purview." *Id.* at 21. Also, if the victim does not subjectively perceive the work environment to be abusive, "the conduct has not actually altered the conditions of the victim's employment, and there is no Title

8

VII violation." *Id.* at 21–22. In evaluating allegedly discriminatory conduct, "frequency ...; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" must be weighed. *Reeves*, 594 F.3d at 808–809 (quoting *Harris*, 510 U.S. at 23).

Spanning from January 2009 to early June 2009, Dr. Helm only documented five incidents, including: (1) Dr. Haddad saying to Dr. Helm that he would "take [Helm] just the way you are;" (2) Dr. Haddad making uninvited comments about his personal sex life, referring to a girlfriend as a "slut," and retelling his story of looking for a prostitute but not finding one; (3) Dr. Haddad telling Dr. Helm that he heard her boyfriend likes to "take it up the ass," where she replied, "he doesn't bat for that team;" (4) Dr. Haddad reaching into Dr. Helm's purse and obtaining a cough drop which he then acted out a fantasy the he was high on Ecstasy while making a "sexually explicit comment;" and (5) Dr. Haddad placing sexually explicit written material in Dr. Helm's mailbox which involved a male doctor having sexual fantasies about his emergency room colleagues. (Doc. 29-1). Accordingly, Dr. Haddad never touched Dr. Helm and never made any sexual propositions or advances towards her. Also, immediately after Dr. Helm complained of Dr. Haddad, the comments ceased. Although Dr. Helm had a subjective belief that she was subjected to unlawful sexual harassment, such belief was not objectively reasonable.

First, this set of allegations does not meet the standard of pervasiveness exhibited in the case law of the Eleventh Circuit. The cases that demonstrate the pervasiveness feature employees who were harasses at least once a day, every day. *Lockett v. Choice Hotels Int'l, Inc.*, 2009 WL 468298 (11th Cir. Feb. 26, 2009) (involving an employee that experienced harassment on a daily basis for four months); *Reeves v. C.H. Robinson Worldwide*, 525 F.3d 1139 (11th Cir. 2008) (involving an employee who was in an office with daily use of sexually offensive language for a

period of nearly three years); *Miller v. Kenworth of Dothan*, 277 F.3d 1269 (11th Cir. 2002)
(involving an employee who was the target of multiple, strong racial epithets each day for a
month). Dr. Helm alleges nothing close to daily harassment during the six month period she
worked with Dr. Haddad.

Second, the behavior is not severe enough to compensate its lack of pervasiveness.
Comparing this case to the recent case law, the conduct alleged of Dr. Haddad against Dr. Helm
does not rise to the level of severity required by this Circuit to constitute a hostile work
environment sexual harassment claim. In *Mendoza*, an employee shared an office space with her
supervisor and was subjected to constant staring "in a very obvious fashion" by her supervisor,
his constant following of her, he directed sexually charged statements at her, and even touched
her once. 195 F.3d at 1242–1243. The Eleventh Circuit held that this conduct fell "well short of
the level of either severe or persuasive conduct sufficient to alter [the] terms or conditions of
employment." *Id.* at 1247. In *Garriga v. Novo Nordisk Inc.*, an employee was subjected to sexual
banter, constant leering by employer, and an instance in which the supervisor put his arm around
the employee was found by the Eleventh Circuit to be even less severe and persuasive conduct
than *Mendoza*. 390 Fed. Appx. 952, 954–955 (11th Cir. 2010). In *Gupta v. Florida Board of
Regents*, the Eleventh Circuit held that touching of one's hand, inner thigh, lifting of a dress hem,
repeatedly asking employee out to lunch, telling employee she is beautiful, staring at employee's
legs, and calling employee at home numerous times at night and asking if employee was in bed
or talking to her boyfriend was not sufficiently severe to create a hostile work environment
sexual harassment claim. 212 F.3d 571, 587 (11th Cir. 2000). In 2012, in *Guthrie v. Waffle
House, Inc.*, the Eleventh Circuit held that an employee subjected to having her butt grabbed
multiple times by her harasser, harasser talking "dirty" to the employee included instances where

10

the harasser said he wanted to "fuck" her and "lick" her "all over," harasser speaking openly

about having sex in a van, asking the employee out 10 to 20 times were actions that fell short of

"conduct so severe as to alter or change the terms of [plaintiff's] work conditions, as determined

by this court's case law." 460 Fed.Appx. 803, 807 (11th Cir. 2012).

Based on the previous Eleventh Circuit holdings in *Mendoza, Garriga, Guptie, Guthrie,*

the comments and actions made by Dr. Haddad toward Dr. Helm fall far short of being severe

enough to establish a claim of sexual harassment. The allegations made by Dr. Helm are simply

not humiliating or threatening enough to be seen as severe in the Eleventh Circuit. Accordingly,

Dr. Haddad never touched Dr. Helm and never made any sexual propositions or advances

towards her. Also, immediately after Dr. Helm complained of Dr. Haddad, the comments ceased.

The sexual harassment Dr. Helm experienced does not appear to be objectively reasonable as a

matter of law. Thus, Defendants' Motion for Summary Judgment is **GRANTED** with regards to

Count I as to Plaintiff's sexual harassment claim.

## IV. Retaliation Under Title VII and FRCA

If the jury finds that Dr. Helm is an employee and the suit is brought against the proper

defendant, then she can go forward at trial with her claim of retaliation. In order to establish a

*prima facie* case of retaliation under Title VII, a plaintiff must prove the following elements: (1)

he or she engaged in statutorily protected activity; (2) he or she suffered a materially adverse

action; and (3) there was some causal relation between the two events. *Goldsmith v. Bagby*

*Elevator Co.,Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry.*

*Co. v. White*, 548 U.S. 53 (2006)); *Hurlbert v. St. Mary's HealthCare Sys., Inc.*, 439 F.3d 126,

1297 (11th Cir. 2006). Materially adverse actions are actions that might dissuade a reasonable

employee from engaging in protected activity. *Burlington N.*, 548 U.S. at 68. A causal

11

connection can be shown where there is a "close temporal proximity" between the employer

learning of the protected conduct and the adverse action. *Farley v. Nationwide Mut. Ins. Co.*, 197

F.3d 1322, 1337 (11th Cir. 1999). This requires, at a minimum, that the employer knew of the

plaintiff's protected conduct. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

After the elements of a claim have been established, the defendant (employer) has an

opportunity to respond with "a legitimate, non-retaliatory reason for the challenged employment

action as an affirmative defense to liability." *Goldsmith,* 513 F.3d at 1277 (citing *Coutu v.*

*Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1073, 1075 n. 54 (11th Cir.1995)); *see*

*also Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002) (stating that the

burden shifts to the defendant to show a legitimate reason for the "adverse employment action").

"The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the

evidence and that the reason provided by the employer is a pretext for prohibited retaliatory

conduct." *Id.*

An employee does not need to prove the underlying discrimination claim for the

retaliation claim to succeed. *Meeks v. Computer Associates, Int'l*, 15 F.3d 1013, 1021 (11th Cir.

1994); *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1187 (11th Cir.

2001); *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir.1989).

An adverse employment action is an ultimate employment decision, such as discharge or failure

to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges

of employment, deprives him or her of employment opportunities, or adversely affects his or her

status as an employee. *Gupta*, 212 F.3d at 587.

Dr. Helm alleges that she was terminated from her employment at Northside because of

her protected activities. The retaliation alleged includes: reduction and denial of work hours,

12

termination and the post-employment retaliation. (Doc. 29). Defendants allege that Dr. Helm is unable to establish, through temporal proximity, a causal connection between her complaint and any of the alleged adverse actions. (Doc. 18). The Eleventh Circuit has held that "a three to four month disparity between statutorily protected expression and the adverse employment action is not enough." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). "Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Id.* Due to the significant time gap between her initial complaint June 13, 2009 and the termination of her employment on January 2011, (Doc. 1), Dr. Helm is unable to establish *prima facie* causation therefore cannot bring a claim of retaliation based on the initial complaint. Although the "temporal gap" is too large to establish causation, Dr. Helm does not contend that the timing of these two events alone establishes evidence of a casual relation. Dr. Helm also contends that her EEOC charges resulted in retaliation, and, therefore, are evidence of casual relation. Due to the temporal proximity between the times that Dr. Helm filed her EEOC Charges and alleged retaliatory acts, including denial of shifts, prevention of transferring hospital, and termination of employment, and the factual issues that are in dispute, Dr. Helm's claim for retaliation for the EEOC Charges is matter of fact to be decided by a jury.

Therefore, Defendants' Motion for Summary Judgment is **DENIED** with regards to Count II as to Plaintiff's retaliation claim, as clarified herein. Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

      **DONE** and **ORDERED** in chambers, in Tampa, Florida, this 9th day of July 2012.

**ELIZABETH A. KOVACHEVICH**
United States District Judge

Copies to: All parties and Counsel of Record

14